UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SAMUEL TILLMAN,

            Plaintiff,

    v.

DET. BRIAN WALSH, et al.,

            Defendants.

Case # 23-CV-6439-FPG
DECISION & ORDER

## INTRODUCTION

Plaintiff Samuel Tillman, *pro se*, brings this civil rights action against Defendants Brian Walsh, Theodore Dinoto, Sean Bailey, Michael Daley, and Hornberger. ECF No. 4. Currently before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 21. Plaintiff has not filed an opposition to the motion. For the reasons that follow, the motion to dismiss is GRANTED IN PART and DENIED IN PART.

## LEGAL STANDARD

In addressing a Rule 12(b)(6) motion to dismiss, the Court "assum[es] all well-pleaded, nonconclusory factual allegations in the complaint to be true[,]" *Harrington v. Cnty. of Suffolk*, 607 F.3d 31, 33 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), but it is "not required to credit conclusory allegations or legal conclusions couched as factual allegations," *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 91 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the

grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." (internal quotation marks omitted).  A claim will be considered facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  A court reviewing a 12(b)(6) motion "must take the allegations as true, no matter how skeptical the court may be," the exception being "allegations that are sufficiently fantastic to defy reality as we know it." *Iqbal*, 556 U.S. at 696.  "In reviewing a motion to dismiss, we may consider [not only] the facts alleged in the complaint, [but also] documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Sabir v. Williams*, 52 F.4th 51, 54 (2d Cir. 2022) (internal quotation marks omitted); *see also Moco v. Janik*, No. 17-CV-398, 2019 WL 3751628, at *3 (W.D.N.Y. Aug. 8, 2019) ("When a court considers a Rule 12(b)(6) motion, it may consider documents that are attached to, incorporated by reference in, or integral to the complaint; and it may also consider matters that are subject to judicial notice." (internal quotation marks omitted)).

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997).  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

Although Plaintiff has failed to respond to the motion to dismiss, this "does not by itself merit dismissal of [the] complaint." *Groenow v. Williams*, No. 13-CV-3961, 2014 WL 941276, at

*2 (S.D.N.Y. Mar. 11, 2014) (citing *Goldberg v. Danaher*, 599 F.3d 181, 183-84 (2d Cir. 2010)).

Even though the motion is unopposed, "the Court remains obligated to review the pleadings and

determine whether there is a sufficient basis for granting the motion." *Id.*  Additionally, courts

must read a *pro se* litigant's pleadings with "special solicitude" and interpret them to raise the

strongest claims they could suggest. *Id.* (citing *Triestman v. Fed. Bureau of Prisons*, 470 F.3d

471, 474-75 (2d Cir. 2006)).

## BACKGROUND

The following facts are derived from Plaintiff's amended complaint, unless otherwise

stated.  *See* ECF No. 4.  On August 5, 2020, Defendants, all Amherst police officers, were

investigating a possible prostitution scheme in Room 148 of an Amherst motel.  *Id*. at 14.

Defendants observed a female and two males—one of which was Plaintiff—in the motel parking

lot and entering Room 148.  *Id*.  Defendants located an online ad and phone number for the female

suspect, which they used to contact her and schedule a time for oral sex, which Defendants planned

to use as a sting operation.  *Id*.  Although Defendants were told via text to meet the female suspect

at the motel, they were not given a room number.  *Id*. at 14-15.

Sometime after receiving the texts, Defendants observed Plaintiff and the other male

exiting Room 148.  *Id*. at 15.  Defendants Walsh and Homberger approached the two men,

identified themselves as police officers, and asked to speak.  *Id*. at 15.  Walsh requested that

Plaintiff walk with him and answer questions.  *Id*. at 15.  Plaintiff asked Walsh if he was under

arrest, to which Walsh replied "No, you['re] not under arrest, but I have to ask you some

questions."  *Id*. at 16.  Plaintiff stated that he did not wish to answer questions if he was not under

arrest and began to walk away.  *Id*. at 16.  Raising his hands to stop Plaintiff, Walsh repeated that

Plaintiff was not under arrest but "I still have to ask you some questions."  *Id*. at 16.  When Plaintiff

said again that he did not wish to answer, Walsh repeated that he had to ask the questions regardless. *Id*. Plaintiff, "realizing that walking away wasn't an option," asked what questions Walsh had. *Id*. at 16-17. Walsh asked what Plaintiff knew about the female suspect's prostitution ad; Plaintiff responded "I don't know, you should go ask her." *Id*. at 17. When Plaintiff repeated his answer, Walsh told Plaintiff "I'm just gonna have you put your hands over there, on the wall, so I can pat you down for my safety." *Id*. at 17. Plaintiff walked to the wall and Walsh performed a pat-down. *Id*. at 17-18. Walsh patted Plaintiff down again "touching [Plaintiff's] pocket with more focus[]." *Id*. at 18. In response, Plaintiff stated "Yeah, it's a gun." *Id*. Walsh and another detective handcuffed Plaintiff, recovered the unloaded gun from his pocket along with bullets and a small amount of cocaine, and placed Plaintiff in a police car. *Id*.

In September 2020, Walsh falsely testified before a grand jury that (1) Plaintiff walked up to the wall "without being told to"; (2) Walsh told Plaintiff that he was not going to search him and instead asked if Plaintiff had anything dangerous on him; and (3) Plaintiff volunteered that he had the gun, bullets, and cocaine in his pocket without requiring a pat-frisk. *Id*. at 20. The grand jury returned an indictment for possession of a weapon in the second degree. *Id*. at 21. Plaintiff, represented by various court-appointed attorneys, learned via discovery that Defendants had written police reports "harmonized" with Walsh's testimony, namely that Plaintiff admitted to possession of a weapon voluntarily and before being searched. *Id*. at 22-23. Defendants' statements also claimed that the text messages with the female suspect had mentioned Room 148 specifically when scheduling the sting. *Id*. at 22-23.[1] After a suppression hearing, in which Walsh "testified to the same false statement," the court dismissed the indictment "due to an unlawful search and seizure." *Id*. at 26-27.

---

[1] Plaintiff further claims that he reviewed the police bodycams worn by Defendants, but that the bodycams "only show [Plaintiff] being placed in the back of a patrol[] car" and lacked relevant audio. *Id*. at 19, 21, 25.

In August 2023, Plaintiff filed the present action *pro se*.  ECF No. 1.  The Court ordered Plaintiff to file an amended complaint, in which Plaintiff raised the following, surviving claims against Walsh under Section 1983: (1) unreasonable search; (2) false arrest; (3) malicious prosecution; (4) fabrication of evidence; and (5) denial of a fair trial.  *See generally* ECF No. 4. Plaintiff also raised a state-law false imprisonment claim against Walsh.  *Id*.  As to the other Defendants, Plaintiff raised the following Section 1983 claims: (1) malicious prosecution; (2) fabrication of evidence; and (3) denial of a fair trial.  *Id*.

In June 2024, Defendants filed the instant motion, arguing that 1) Plaintiff's unreasonable-search, fabrication-of-evidence, and fair-trial claims should be dismissed for failure to state a claim; and (2) Plaintiff's unreasonable-search, false-arrest, malicious-prosecution, and fair-trial claims should be dismissed on qualified immunity grounds.[2]  ECF No. 21.  Defendants attached copies of the criminal complaint and several police reports for Plaintiff's arrest to the motion to dismiss.[3]  ECF No. 21-2.  As relevant here, the police reports concerning Plaintiff's arrest state that Daley "made arrangements by phone for oral sex for $120 in room 148," and that Walsh

---

[2] Defendants' motion to dismiss is not clearly arranged, and it is possible that Defendants intended to argue that additional claims warranted dismissal for failure to state a claim or qualified immunity.  In one section, Defendants blanketly refer to the standards of qualified immunity and state that "Plaintiff's action against [] Defendants must be dismissed," but fail to make any specific arguments concerning Plaintiff's claims.  ECF No. 21-3 at 6-8.  If Defendants intended this to make a qualified immunity argument against Plaintiff's fabrication of evidence claim, they did so in overly vague terms.  *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."); *Spectrum Northeast, LLC v. City of Rochester*, No. 21-CV-6453, 2022 WL 787964, at *4 (W.D.N.Y. Mar. 15, 2022) (holding that litigants have "an obligation to spell out [their] arguments squarely and distinctly" and should not rely on courts to make their assertions concrete (internal quotation marks omitted)).  The Court will not attempt to puzzle out Defendants' intentions and instead addresses only their clearly-delineated and briefed arguments.

[3] Typically, the standards of a Rule 12(b)(6) motion to dismiss requires that the Court only consider documents attached to or incorporated by reference in the plaintiff's operative complaint.  *See Sabir*, 52 F.4th at 54.  Here, Plaintiff specifically referred to the police reports provided by Defendants, including exact quotations.  *See* ECF No. 4 at 22-23.  Accordingly, the Court relies on the police reports as documents incorporated by reference into Plaintiff's amended complaint.

performed "a pat down of [Plaintiff] who stated that he had a gun in his pocket . . . as well as bullets and cocaine." *Id*. at 6, 19.

The Court notified Plaintiff of the motion, mailed said notice to Plaintiff, and granted an extension of time to respond. ECF Nos. 22, 25. Plaintiff has failed to respond.

## DISCUSSION

Defendants argue that Plaintiff's claims should be dismissed for failure to state a claim or on qualified immunity grounds. The Court limits its analysis to the arguments raised by Defendants and addresses them below.

### I.    Failure to State a Claim

#### a.   Unreasonable Search

"The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Davis v. United States,* 131 S.Ct. 2419, 2426 (2011) (internal quotation marks omitted). An order to stop constitutes a seizure if a reasonable person would have believed he was not free to leave, and the person complied with the order to stop. *United States v. Simmons*, 560 F.3d 98, 105-06 (2d Cir. 2009). For example, a police officer identifying a suspect, approaching them, and performing a pat-down search for safety purposes would constitute a seizure. *See Johnson v. City of Mount Vernon*, No. 10-CV-7006, 2012 WL 4466618, at *2 (S.D.N.Y. Sept. 18, 2012) (finding that it constituted a seizure where police officer "approached plaintiff and told him that a witness had pointed him out, asked plaintiff if he had anything on him, and told plaintiff he was going to pat plaintiff down for safety reasons"). However, "an investigatory stop (temporary detention) and frisk (a pat down) may be conducted without violating the Fourth Amendment's ban on unreasonable searches and seizures if two conditions are met." *Id*. "First, the investigatory stop must be lawful. That

requirement is met in an on-the-street encounter . . . when the police officer reasonably suspects that the person apprehended is committing or has committed a criminal offense.  Second, to proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 326-27 (2009).  Reasonable suspicion to search "demands specific and articulable facts which, taken together with rational inferences from those facts, [that] provide detaining officers with a particularized and objective basis for suspecting wrongdoing[.]"  *United States v. Bailey*, 743 F.3d 322, 332 (2d Cir. 2014) (citations and internal quotation marks omitted).  Importantly, reasonable suspicion "is less than probable cause, requiring only facts sufficient to give rise to a reasonable suspicion that criminal activity may be afoot and that the person stopped *may* be armed and presently dangerous." *Id*. (internal quotation marks omitted).

On the merits, Defendants argue that Plaintiff's unreasonable-search claim against Walsh should be dismissed because Plaintiff consented to the search.  ECF No. 21-3 at 8.  The Court disagrees.  On the contrary, the amended complaint sufficiently alleges that Plaintiff did not consent to any search.  "It is by now well established that an individual may consent to a search, thereby rendering [an otherwise unreasonable search] reasonable."  *United States v. Garcia,* 56 F.3d 418, 422 (2d Cir. 1995).  "To ascertain whether a consent is valid, the [c]ourts review the totality of the circumstances to determine whether the consent was a product of that individual's free choice," rather than mere "acquiescence to a show of authority."  *United States v. Cummings*, 764 F. Supp. 2d 480, 514 (E.D.N.Y. 2011).

Here, Plaintiff does not allege that Walsh asked him to consent to a pat-down search, or that Walsh explained that the pat-down was voluntary.  Rather, Plaintiff states that Walsh simply ordered Plaintiff to "put your hands over there, on the wall, so I can pat you down."  ECF No. 4 at

17. Plaintiff states outright that he believed "walking away wasn't an option" when Walsh stopped him, and his allegations make clear that Plaintiff only complied because Walsh had ordered him to do so. *Id*. at 16-17. At this stage of litigation, the Court is obliged to rely on Plaintiff's allegations, and those allegations demonstrate that Plaintiff's compliance with the search was due purely to "acquiescence to a show of authority," as opposed to any free choice on his part. *Cummings*, 764 F. Supp. 2d at 514.

The Court further notes that, based on the allegations in the amended complaint, Walsh's pat-down did not meet the standards for a lawful investigatory search. Even assuming that Walsh had a reasonable suspicion that Plaintiff had committed a criminal offense due to Plaintiff having been seen exiting a room in which suspected prostitution was taking place, there is no indication in the record that Walsh reasonably suspected Plaintiff was "armed and dangerous." *Arizona*, 555 U.S. at 326-27. Indeed, none of the allegations or documents referenced in the amended complaint show that there was *any* suspicion that Plaintiff was armed prior to Walsh having discovered the gun during his pat-down. Even under the generous requirements needed for reasonable suspicion, Plaintiff's amended complaint sufficiently pleads that Walsh performed an unreasonable search. Accordingly, the Court denies Defendant's motion to dismiss the unreasonable-search claim for failure to state a claim.

### b. Fabricated Evidence

"[T]o state a Section 1983 claim on the basis of fabricated-evidence, a plaintiff must plead that 'an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result.'" *O'Hara v. City of New York*, 568 F. Supp. 3d 241, 249–50

(E.D.N.Y. 2021) (quoting *Smalls v. Collins*, 10 F.4th 117 (2d Cir. 2021)).[4]  A Section 1983 claim requires the "personal involvement of defendants in alleged constitutional deprivations" which in the context of a fabricated-evidence claim means showing the "intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (internal quotation marks omitted); *see also Barnes*, 68 F.4th at 129 (concluding that plaintiff's allegation that defendants falsely testified having witness plaintiff sell drugs sufficiently stated a claim of fabricated evidence); *Jovanovic v. City of New York*, No. 04-CV-8437, 2006 WL 2411541, at *13 (S.D.N.Y. Aug. 17, 2006) (denying motion to dismiss where plaintiff alleged, as relevant here, that defendant "prepared police reports containing false and misleading information about [plaintiff's] arrest and the evidence collected at [plaintiff's] apartment, which he then forwarded to prosecutors").

Defendants move to dismiss Plaintiff's fabricated-evidence claims against all Defendants for failure to state a claim.  The Court will begin by addressing the claim against Walsh, then turn to the remaining Defendants.

With regards to Walsh, Defendants argue that it is "unclear what evidence Plaintiff is alleging Detective Walsh fabricated" and that Plaintiff's allegations of fabricated evidence are conclusory.  ECF No. 21-3 at 11.  The Court disagrees.  The amended complaint is clear in alleging that Walsh falsely testified that (1) Plaintiff walked up to the wall "without being told to"; (2) Walsh told Plaintiff that he was not going to search him and instead asked if Plaintiff had anything dangerous on him; and (3) Plaintiff volunteered that he had the gun, bullets, and cocaine in his

---

[4] As to the fifth prong, courts "have long held that Section 1983 liability attaches for knowingly falsifying evidence even where there simultaneously exists a lawful basis for the deprivation of liberty that the plaintiff suffered." *Smalls*, 10 F.4th at 132 (internal quotation marks omitted). Therefore, even where there is some "lawful basis for some of the deprivations [plaintiff] suffered, it would not sever the causal link between the fabricated evidence and those same deprivations, as well as others, that [plaintiff] suffered as a result" of the prosecution. *Barnes v. City of New York*, 68 F.4th 123, 131 (2d Cir. 2023).

pocket without requiring a pat-frisk.  ECF No. 4 at 20.   Plaintiff alleges that Walsh made these statements before the grand jury that indicted Plaintiff on the gun charge and repeated them at a later suppression hearing.  *Id*. at 20, 26.  Such allegations have been found to satisfy the relatively low pleadings standards required to survive a motion to dismiss.  *See Barnes*, 68 F.4th at 129 (holding that plaintiff's allegations that defendants provided false testimony that resulted in plaintiff's prosecution were "more than bare assertions" and were enough to "plausibly allege that the [defendants] knowingly made false statements").  The Court therefore denies Defendants' motion to dismiss the fabricated-evidence claims against Walsh for failure to state a claim.

The Court agrees, however, that dismissal of the fabricated-evidence claims against the other Defendants is warranted.  Plaintiff does not allege that the other Defendants falsely testified against him, but rather that they wrote police reports "harmonized" with Walsh's false testimony, which they then forwarded to prosecutors.  ECF No. 4 at 22-23.  However, the police reports provided by Defendants—which Plaintiff incorporated by reference into his amended complaint— do not expressly contradict Plaintiff's alleged version of events.  The police reports authored by the other Defendants stated that Walsh performed "a pat down of [Plaintiff] who stated that he had a gun in his pocket . . ., as well as bullets and cocaine."  ECF No. 21-2 at 6, 19.   It does not say that Plaintiff volunteered to be searched or that he was only searched after admitting to having a gun, which are the falsehoods to which Walsh allegedly testified.  Plaintiff claims the reports contain a further falsehood in that they state Daley "made arrangements by phone for oral sex for $120 in room 148," whereas in reality Dealy's arrangements had not specified the room.  *Id*.  Even if this were fabricated information, however, the Court cannot see how it would have been likely to influence a jury's decision.  Plaintiff's allegations state that the police were already investigating Room 148 as a place of possible prostitution and were in the midst of active surveillance prior to

Daley arranging the oral sex. ECF No. 4 at 14. Police also intercepted Plaintiff before the time the arranged rendezvous would have taken place, and Plaintiff's prosecution was on the basis on his gun possession. *Id*. at 14, 21. It is not clear how the alleged falsehood about Daley's text arrangements would have practically influenced a jury's verdict. Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's fabrication-of-evidence claims against the other Defendants.

### c. Fair Trial[5]

A defendant's right to due process under the Fourteenth Amendment encompasses "the right to have one's case tried based on an accurate evidentiary record that has not been manipulated by the prosecution." *Dufort v. City of New York*, 874 F.3d 338, 355 (2d Cir. 2017); *see also Ramchair v. Conway*, 601 F.3d 66, 73 (2d Cir. 2010) ("The right to a fair trial[] [is] guaranteed to state criminal defendants by the Due Process Clause of the Fourteenth Amendment." (alterations in original)). Section 1983 therefore permits suits for violations of the "right not be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigatory capacity." *Dufort*, 874 F.3d at 354. "To prevail on a fair trial claim based on fabrication of evidence," a plaintiff must show the same elements as those of a separate fabricated-evidence claim, that is "that (1) [an] investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." *Miller v. Terrillion*, 436 F. Supp. 3d 598, 601 (E.D.N.Y. 2020); *see also Willis v. Rochester Police Dep't*, No. 15-CV-6284, 2018 WL 4637378,

---

[5] A plaintiff may still bring a due process claim for the denial of a fair trial even when no trial ultimately occurred. *E.g.*, *Sumasar v. Nassau County*, No. 11-CV-5867, 2016 WL 1240381, at *11 n.1 (E.D.N.Y. Mar. 28, 2016); *Douglas v. City of New York*, 595 F. Supp. 2d 333, 346 (S.D.N.Y. 2009) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997) ) ("The Second Circuit has permitted a claim under § 1983 for violation of the right to a fair trial to proceed even where no trial took place.").

at *8 (W.D.N.Y. Sept. 27, 2018) (using same standard for a fair-trial claim based on defendant's alleged fabrication of evidence).

Because Plaintiff's fair-trial claims are premised on the fabrication of evidence by Defendants, they are judged on the same standards as the fabricated-evidence claims discussed above. As already noted, Plaintiff has alleged sufficient facts to state a claim of fabricated-evidence against Walsh, but not against the other Defendants. Accordingly, the Court will dispense with Plaintiff's fair-trial claims in the same manner, denying dismissal for failure to state a claim as to Walsh but granting it as to the other Defendants.

## II.    Qualified Immunity

The doctrine of qualified immunity shields government employees acting in their official capacities from suits for damages under Section 1983 unless (1) the conduct at issue violated plaintiff's clearly established constitutional rights and (2) a reasonable official in the defendant's position would have known the conduct amounted to a constitutional violation. *See Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996). For a right to be "clearly established," the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). It is not necessary to find a "case directly on point" in order to show that the law governing a plaintiff's claim is clearly established, but existing precedent must have placed the [constitutional] right "beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011). This is not to say that an official action is protected by qualified immunity "unless the very action in question has previously been held unlawful," *Mitchell v. Forsyth*, 472 U.S. 511, 535 n.12 (1985), but rather that "in the light of pre-existing law the unlawfulness must be apparent," *Anderson*, 483 U.S. at 640.

Even when a clearly established constitutional right is arguably violated, "an officer is entitled to qualified immunity if officers of reasonable competence would disagree on the legality of the action at issue in its particular factual context." *Walczyk v. Rio,* 496 F.3d 139, 154 (2d Cir. 2007) (internal citations omitted). "[A] qualified immunity defense is established if [. . .] it was objectively reasonable for the defendant to believe that his action did not violate such law." *Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir. 1996).

"It is well settled in this Circuit that a defendant's ability to rely on qualified immunity from liability is a question of law for the court to decide *only* when the facts are not in dispute." *Flores v. City of New York*, No. 21-CV-1680, 2022 WL 4705949, at *10 (S.D.N.Y. Aug. 8, 2022), *report and recommendation adopted*, 2022 WL 4592892 (Sept. 30, 2022) (citing *Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995)); *see also Finnegan v. Fountain*, 915 F.2d 817, 821 (2d Cir. 1990) ("Once disputed factual issues are resolved, the application of qualified immunity is . . . ultimately a question of law for the court to decide."). Although qualified immunity claims "should be decided as early as possible in a case," it "is often best decided on a motion for summary judgment when the details of the alleged deprivations are more fully developed." *Walker v. Schult*, 717 F.3d 119, 130 (2d Cir. 2013); *see also McKenna v. Wright*, 386 F.3d 432, 435-36 (2d Cir. 2004) ("[U]sually, the defense of qualified immunity cannot support the grant of a [Rule] 12(b)(6) motion for failure to state a claim upon which relief can be granted."). "[A] qualified immunity defense can be presented in a Rule 12(b)(6) motion, but . . . the defense faces a formidable hurdle when advanced on such a motion and is usually not successful." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006) (internal quotation marks omitted).

"[B]y presenting [their] immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment[, the defendants] must accept the more stringent standard applicable to this

procedural route." *McKenna*, 386 F.3d at 436. "Briefly summarized, we accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiffs' favor, including both those that support the claim and those that defeat the immunity defense." *Edrei v. Maguire*, 892 F.3d 525, 532 (2d Cir. 2018) (internal quotation marks omitted). "The defense will succeed only where entitlement to qualified immunity can be established based solely on facts appearing on the face of the complaint." *Smith v. Arrowood*, No. 21-CV-6318, 2022 WL 3927884, at *8 (W.D.N.Y. Aug. 31, 2022) (internal quotation marks and alterations omitted). "But that does not mean that qualified immunity can never be established at the pleading stage. To the contrary, every case must be assessed on the specific facts alleged in the complaint." *Garcia v. Does*, 779 F.3d 84, 97 (2d Cir. 2015). Rather, a dismissal under Rule 12(b)(6) on qualified immunity grounds "may be appropriate where, for example, a defendant can demonstrate that, as a matter of law, the constitutional right that is alleged to have been violated was not clearly established at the time of the alleged violation." *Hart v. Artus*, No. 16-CV-6808, 2021 WL 3022293, at *14 (W.D.N.Y. July 16, 2021) (internal quotation marks omitted).

### a. Unreasonable Search

Defendants argue that Walsh is entitled to qualified immunity as to the unreasonable-search claim because (1) Plaintiff consented to the search; and (2) Walsh reasonably believed he had probable cause to search Plaintiff because he observed Plaintiff exit a room under watch for suspected prostitution. ECF No. 21-3 at 8. The Court disagrees.

First, as stated in its discussion on whether Plaintiff stated a claim against Walsh, the Court does not agree that Plaintiff's allegations show that he consented to a search. Because qualified immunity must be decided "solely on [the] facts appearing on the face of the complaint," *Smith*, 2022 WL 3927884, at *8, the Court declines to grant qualified immunity on this ground.

Second, as to whether Walsh reasonably believed that he had not violated Plaintiff's rights by conducting the search, the Court notes that all reasonable inferences in determining qualified immunity must be drawn in Plaintiff's favor. *See Edrei*, 892 F.3d at 532. But even if the Court assumed that Walsh had an reasonable belief that Plaintiff had been connected with the alleged prostitution, Defendants do not argue that Walsh believed Plaintiff was armed and dangerous prior to the search. *Arizona*, 555 U.S. at 326-27. The right to be free from pat-down searches where there is no indication of the search party being armed is well-established, and a reasonable officer would have understood as much. *See, e.g., Bennett v. City of Eastpointe*, 410 F.3d 810, 837-840 (6th Cir. 2005) (concluding that defendants were not entitled to qualified immunity because performing a pat-down search where there was no indication that plaintiffs were "armed and dangerous" was "objectively unreasonable"); *Martinez v. Mares*, 613 F. App'x 731, 740 (10th Cir. 2015) (denying motion to dismiss on qualified immunity grounds because, as relevant here, "a reasonable officer would have understood . . . it would be unconstitutional . . . to conduct a pat-down for weapons unless there was a reason to believe [plaintiff] himself was armed and dangerous").

Accordingly, the Court denies Defendants' motion to dismiss the unreasonable-search claim on qualified immunity grounds.

### b. False Arrest[6]

A false-arrest claim under Section 1983 requires a plaintiff to show that "the defendant intentionally confined him without his consent and without justification." *Weyant v. Okst*, 101

---

[6] Plaintiff's amended complaint refers occasionally to "false imprisonment" as well as false arrest. ECF No. 4 at 12. The Court will address both collectively as "false arrest," because "false arrest is considered a kind of false imprisonment, and the claims are analyzed in an identical fashion." *Smith v. City of New York*, No. 13-CV-2395, 2014 WL 4904557, at *3 (E.D.N.Y. Sept. 30, 2014) (citing *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir.1995)). This is true even where the false imprisonment claim arises under state law. *See Lalonde v. City of Ogdensburg*, 662 F. Supp. 3d 289, 311 (N.D.N.Y. 2023) ("Indeed, in New York, the tort of false arrest is synonymous with false imprisonment." (internal quotation marks and alterations omitted)).

F.3d 845, 852 (2d Cir. 1996).  A false-arrest claim under New York law requires the same showing and is judged by the same standard as a Section 1983 claim.  *See Levantino v. Skala*, 56 F. Supp. 3d 191, 199 (E.D.N.Y. 2014) ("Section 1983 claims for false arrest and false imprisonment are substantially the same in all relevant respects as claims for false arrest and false imprisonment under state law," including in the sense that "false arrest and false imprisonment are synonymous cases of action." (internal quotation marks omitted)).

"The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest . . . under § 1983." *Id.* (citations and internal quotation marks omitted); *see also Hays v. City of New York*, No. 14-CV-10126, 2017 WL 782496, at *2 (S.D.N.Y. Feb. 28, 2017) (holding as a matter of law that plaintiff's claims for false arrest, false imprisonment, and abuse of process all "fail if there was probable cause to arrest and prosecute [her] for an offense").  "An officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006) (internal quotation marks and citations omitted).  To determine whether probable cause existed for an arrest, a court "assess[es] whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012).  A "claim for false arrest turns only on whether probable cause existed to arrest a defendant" and not "whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Id*. at 154.

"Even if probable cause to arrest is ultimately found not to have existed, an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there

was 'arguable probable cause' to arrest." *Rivera v. City of Rochester*, No. 09-CV-6621, 2015 WL 409812, at *4 (W.D.N.Y. Jan. 29, 2015). "Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Id.* (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991). Accordingly, the test for qualified immunity "is more favorable to the officers than the one or probable cause" and "arguable probable cause will suffice to confer qualified immunity." *Id.* (internal quotation marks omitted).

Defendants argue that Walsh's discovery of a gun on Plaintiff's person provided at least arguable probable cause to arrest, and therefore qualified immunity is appropriate. The Court agrees. This stance may appear contradictory, given that the Court has concluded that Plaintiff sufficiently alleged that Walsh lacked probable cause to search him. However, courts have drawn a distinction between probable cause to *search* and probable cause to *arrest*. The latter is what is at issue in determining a false-arrest claim. *See Weyant*, 101 F.3d at 852. Essentially, although defendants may lack probable cause to search, they may still have probable cause to arrest based on the evidence found. *See Townes v. City of New York*, 176 F.3d 138, 149 (2d Cir. 1999) (holding, where plaintiff was arrested on the basis of weapons found in an illegal search, "[t]he individual defendants here lacked probable cause to stop and search [plaintiff], but they certainly had probable cause to arrest him upon discovery of the handguns"); *Gannon v. City of New York*, 917 F. Supp. 2d 241, 243-44 (S.D.N.Y. 2013) (concluding, in the Rule 12(b)(6) context, that although plaintiff was arrested on the basis of firearms discovered in an illegal search, defendants still had probable cause to arrest sufficient to defeat a false-arrest claim). In short, "[t]he lack of probable cause to stop and search does not vitiate the probable cause to arrest." *Townes*, 176 F.3d at 149.[7]

---

[7] The Court further notes that the Second Circuit has concluded that "the fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant." *Townes*, 176 F.3d at 149; *Gannon*, 917 F. Supp. 2d at 243 ("The Second Circuit

Relying on Plaintiff's allegations, Walsh lacked probable cause to perform the pat-down on Plaintiff. However, that search revealed Plaintiff's gun, which provided Defendants with sufficient probable cause to arrest Plaintiff for possession of a firearm. Because even arguable probable cause is enough to entitle Defendants to qualified immunity, *Rivera*, 2015 WL 409812, at *4, the Court grants the motion to dismiss the false-arrest claims on this ground.

### c. Malicious Prosecution

"To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York,* 612 F.3d 149, 161 (2d Cir. 2010) (internal quotation marks and citations omitted). "Under New York law, police officers can 'initiate' prosecution by filing charges or other accusatory instruments." *Cameron v. City of New York,* 598 F.3d 50, 63 (2d Cir. 2010). The existence of probable cause is a complete defense to the claim, *see Savino v. City of New York,* 331 F.3d 63, 69 (2d Cir. 2003), whereas "[a] lack of probable cause generally creates an inference of malice," *Boyd v. City of New York,* 336 F.3d 72, 78 (2d Cir. 2003). In determining if a defendant is entitled to qualified immunity for a malicious prosecution claim, the applicable test is not whether officials had probable cause to pursue criminal charges, but whether they had "arguable probable cause." *Escalera v. Lunn,* 361 F.3d 737, 743 (2d Cir. 2004). "The Second Circuit has clarified that 'probable cause' in the malicious prosecution context means 'probable cause to believe that [the prosecution] could succeed.'" *Vasquez v. Reilly,* No. 15-CV-9528, 2017 WL 946306, at *8 (S.D.N.Y. Mar. 9, 2017) (quoting *Boyd*, 336 F.3d at 76). Accordingly, where "the evidence giving

---

has clearly rejected an attempt to recover damages under [Section] 1983 based on the fruits of the poisonous tree doctrine.").

rise to the prosecution 'would clearly not be admissible,' then 'there [is] no probable cause to believe [a] prosecution could [have] succeed[ed].'" *Id.* at 26 (quoting *Boyd*, 336 F.3d at 76).

Defendants argue that qualified immunity should foreclose Plaintiff's malicious-prosecution claims because Defendants "reasonably believed that they had probable cause to (1) search the Plaintiff, and (2) detain the Plaintiff after discovery of a firearm, cocaine, and ammunition." ECF No. 21-3 at 10. However, Defendants "seem to conflate probable cause to arrest" or search "with probable cause to believe that [Plaintiff] could be successfully prosecuted." *Posr v. Ct. Officer Shield No. 207*, 180 F.3d 409, 417 (2d Cir. 1999). The latter is the only consideration for a malicious-prosecution claim, and Defendants fail to make any argument as to the existence of probable cause to prosecute. Regardless, the Court disagrees that—at this early stage—Plaintiff's allegations show that there was arguable probable cause to prosecute. Plaintiff alleges that the prosecution against him was based, among other things, on evidence obtained via an illegal search. In cases where evidence from a search or arrest is later suppressed, courts have found that there is a reasonable dispute as to whether probable cause existed to believe a prosecution based on that evidence would be successful. *See Gannon*, 917 F. Supp. 2d at 244-45 (denying motion to dismiss malicious prosecution claims, finding that a lack of probable cause existed where "[p]laintiff clearly allege[d] that [the defendant] filed charges against [p]laintiff after the arrest pursuant to an unlawful search"); *Mazyck v. Johnson*, No. 08-CV-548, 2009 WL 2707360, at *5 (E.D.N.Y. Aug. 25, 2009) ("[A] reasonable jury could find that [the defendants] . . . had no probable cause to believe that the prosecution would succeed, given that the [evidence seized] would be suppressed.").

Given the stringent standards for qualified immunity on a Rule 12(b)(6) motion, the Court cannot conclude that Defendants are entitled to qualified immunity as to the malicious-prosecution claims at this time.  Accordingly, Defendants' motion is denied.

### d.  Fair Trial

Defendants argue for qualified immunity as to Plaintiff's fair-trial claim, albeit in a confusing manner.  As Defendants themselves acknowledge, qualified immunity is unavailable on "a claim for denial of the right of a fair trial where the claim is premised on proof that a defendant knowingly fabricated evidence and where a reasonable jury could so find." *Morse v. Fusto*, 804 F.3d 538, 550 (2d Cir. 2015).  Defendants claim, however, that Plaintiff's "right to a fair trial cause of action arises from [] Defendants['] alleged unreasonable search and unlawful arrest."  ECF No. 21-3 at 14.  It is not clear how Defendants came to this conclusion.  Plaintiff's amended complaint states explicitly that Defendants "violated his right to a fair trial by false testimony/fabricated evidence."  ECF No. 4 at 27.

In light of this, and the Court's earlier finding that Plaintiff has sufficiently alleged a fair-trial claim against Walsh, the Court declines to extend Walsh qualified immunity as to this claim.

### CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss (ECF No. 21) is GRANTED IN PART and DENIED IN PART.  Plaintiff's fabricated-evidence and fair-trial claims against Dinoto, Bailey, Daley, and Hornberger, and all of Plaintiff's federal-law and state-law false-arrest claims, are DISMISSED WITH PREJUDICE.  Plaintiff's claims for (1) unreasonable search and (2) fabrication of evidence against Walsh, as well as his (3) denial of a fair trial and (4) malicious prosecution claims against all Defendants, will proceed.  Defendants must file an answer within 21 days of entry of this Order.

IT IS SO ORDERED.

Dated: March 27, 2025
         Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York